**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| David R. Kunze, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Leanne Bertsch, et. al., | ) | Case No.    1:05-cv-104 |
| | ) | |
| Defendants. | ) | |

Plaintiff filed this pro se civil rights suit under 42 U.S.C. § 1983.  He was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(b).  Thereafter, he was granted leave to amend his complaint.  As plaintiff has now filed his amended complaint, this matter is now ripe for an initial review as mandated by 28 U.S.C. §1915(A).

## I.    BACKGROUND

Plaintiff, an inmate at the North Dakota State Penitentiary ["NDSP"], is no stranger to this court.  On September 24, 2003, plaintiff filed a *pro se* § 1983 action against numerous defendants, including a number of NDSP personnel and local physicians. ["2003 Civil Rights Action"]  At that time, plaintiff had two complaints.  The first was that he was dying of throat cancer and was not receiving adequate medical attention.  The second was that he was being held for an extended period of time in administrative segregation in violation of his civil rights.

The court dismissed the 2003 Civil Rights Action granting summary judgments under the following captions:  Kunze v. Rauser, 332 F.Supp.2d 1269 (D.N.D. 2004) and Kunze v. Diehl, 345

1

F.Supp.2d 1031 (D.N.D. 2004).  With respect to his medical claim, the court, in relevant part, stated

the following:

> The Eighth Circuit has consistently recognized that a serious medical need must be supported by medical evidence, such as a physician's diagnosis, or a condition that is obvious to a lay person. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir.1999). The Court has also recognized that "[a] plaintiff's self-diagnosis alone cannot establish that he suffers from a serious medical need when the medical evidence does not support his self-diagnosis." *Id.*
>
> The record clearly establishes that Kunze has been subjected to a battery of physical examinations, diagnostic tests, and numerous studies designed to determine the etiology of his subjective complaints or concerns of having throat cancer. Since late 1999, Kunze has been evaluated by one physician's assistant, and at least eight physicians, three of who are ear, nose, and throat specialists. These treating physicians have ordered a multitude of tests, including a thyroid test, a throat culture, biopsy, an EKG, and a CAE (a test designed to find an (sic) cancer or tumor markers). Kunze was scheduled for a CT scan but failed to comply with pre-CT scan instructions so the scan was cancelled. Kunze was diagnosed with high blood pressure, low grade diabetes, anxiety problems, gastritis, chronic tonsillitis and laryngitis, and an ulcer, and appropriate care and treatment was provided. The clear and undisputed evidence in the record establishes that all of the treating physicians who have examined and evaluated Kunze to date have concluded that he has exhibited no signs or symptoms of cancer. To say that the medical evidence does not support the self-diagnosis of cancer would be an understatement.

332 F.Supp.2d at 1278.

> With respect to plaintiff's administrative-segregation claim, the court found the following:
>
> On November 6, 2002, David Kunze was placed in administrative segregation after allegedly threatening to kill another inmate. Kunze has a history of felony offenses resulting in incarceration in county jails and numerous state and federal prisons. He also has a history of at least six escapes from detention, including two escapes from the State Penitentiary. Kunze's current sentence was imposed for theft and robbery while on escape from a county jail.
>
> North Dakota State Penitentiary officials conducted an investigation and concluded there was evidence showing Kunze had threatened to kill another inmate. Consequently, Kunze was transferred to disciplinary detention with the understanding that he would return to administrative segregation once he completed his disciplinary detention. The rationale for returning Kunze to administrative segregation was that he posed a continuing danger to the general penitentiary population.

2

Penitentiary officials conducted weekly reviews of Kunze's status following his return to administration segregation. After two months they concluded that Kunze's "recent violent behaviors or tendencies" warranted an extended stay in administrative segregation.

While in administrative segregation, Kunze was afforded an opportunity to meet with the penitentiary's Administrative Segregation Committee once a month to discuss his status and to present his case for a return to the penitentiary's general population. Kunze was also given a chance to meet with Warden Tim Schuetzle once every three months. However, from November 2002 through January 2004, Kunze refused to meet with the either the Committee or the Warden. In his quarterly review dated July 25, 2003, Warden Schuetzle noted that Kunze had made threats against the Warden, correctional officers, and the law enforcement officers that arrested him. The Warden noted that Kunze "writes often about getting a gun and killing 'those sons of bitches.' " The Warden concluded that Kunze was not a good candidate for release from administrative segregation given that he was continually threatening the penitentiary's staff. Kunze's threatening behavior continues today.

Id. at 1271-72 (footnotes omitted). Based on the foregoing, the court concluded there was no constitutional violation because there were legitimate, non-punitive reasons for plaintiff's extended placement in administrative segregation, and because he was periodically afforded opportunities to request release. Id. at 1276-77.

The court issued the first of its two summary judgment orders in the 2003 Action on September 8, 2004. Approximately a year later, in August 2005, plaintiff was charged administratively with assaulting a penitentiary staff member. The penitentiary's disciplinary committee conducted a hearing and concluded plaintiff had committed the offense as charged. The committee recommended plaintiff be placed in disciplinary segregation for 60 days and that he lose three months good-time credit. Plaintiff alleges he appealed the committee's action and lost.

On September 9, 2005, plaintiff commenced this action and moved to proceed *in forma pauperis*. Thereafter, he filed a motion seeking leave to file an amended complaint. Both motions were granted by the court on September 29, 2005.

3

On October 20, 2005, plaintiff lodged two proposed amended complaints with the court. The court has reviewed both proposed amended complaints and notes that while they differ in form– one is typed while the other is handwritten–they are ostensibly the same in substance. As the typed version is the more legible of the two, the court shall direct that it be filed by the Clerk of Court as the operative pleading.

## II.   **DISCUSSION**

### A.   **Standard of Review**

When a prisoner seeks to sue a governmental entity, officer, or employee, the court is required under 28 U.S.C. § 1915A to conduct a preliminary screening of plaintiff's complaint to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. In addition, the court also has the power under § 1915(e)(2) to dismiss an *in forma pauperis* proceeding  any time the court determines the proceeding is frivolous or malicious, fails to state a claim upon which relief should be granted, or seeks monetary relief against an immune defendant.

In conducting its § 1915A review, the court must keep in mind the admonition of the Eighth Circuit that *pro se* prisoner complaints are to be liberally construed and that the court is obligated to determine whether the complaint provides relief "on any possible theory." Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988). The court may not dismiss the complaint unless it "appears beyond doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999). An action is frivolous if "it lacks an arguable basis in law or in fact." Nietske v. Williams, 490 U.S. 319, 325 (1989).

In this case, plaintiff alleges claims under 42 U.S.C. § 1983.  To state a claim pursuant to 42 U.S.C.§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

### B.      Plaintiff's Allegations

Plaintiff's amended complaint consists of a lengthy, disjointed narrative alleging a myriad of complaints along with citation to legal authority, much of which is not on point.  The claims the court has been able to decipher are set forth below.  Generally speaking, these claims can be grouped into three categories: (1) claims relating to the 2005 Disciplinary Action; (2) a claim encompassed completely by the 2003 Civil Rights Action; and (3) other claims.

| Claim # | Description |
|---------|-------------|
| 1 | Plaintiff's rights to due process and equal protection were violated during the 2005 Disciplinary Action because the penitentiary's disciplinary committee consisted of two, as opposed to three, members. (Amended Complaint, pp.1-3, 11, 17) |
| 2 | The disciplinary committee deprived plaintiff of his due process and equal protection rights during the 2005 Disciplinary Action in that it failed to provide him with written statements obtained from penitentiary guards and "force reports" prior to his disciplinary hearing. (Amended Complaint, pp. 1-8) |
| 3 | The disciplinary committee deprived plaintiff of his due process and equal protection rights during the 2005 Disciplinary Action in that it failed to provide plaintiff with exculpatory investigative reports prior to his disciplinary hearing.  (Amended Complaint, pp. 1-8) |
| 4 | The 2005 Disciplinary Action was brought by prison officials in retaliation for plaintiff having commenced the 2003 Civil Rights Action and was based upon lies and false information provided by prison officials.  (Amended Complaint, pp. 6-7) |

5

5 Plaintiff has been denied treatment for throat cancer in violation of his Eighth Amendment Rights.  (Amended Complaint, p. 3-4, 20)

6 Plaintiff was falsely convicted of an administrative violation in November 2002 resulting in his being placed in segregated confinement. (Amended Complaint, pp. 3 & 20)

7 Prison officials have held plaintiff in extended segregated confinement in retaliation for having commenced the 2003 Civil Rights Action. (Amended Complaint, pp. 6-7)

8 The duration and conditions of the plaintiff's segregated confinement constitutes cruel and unusual punishment in violation of the Eighth Amendment. (Amended Complaint, pp. 3-4)

9 The penitentiary's legal assistance program does not meet constitutional standards.  (Amended Complaint, p. 9)

10 Interference with legal mail.  (Amended Complaint, p. 9)

11 Interference with non-legal mail. (Amended Complaint, p. 9 and attachments)

12 Confiscation of plaintiff's reading material in violation of the First Amendment.  (Amended Complaint, p. 21-22)

**C. Claims relating to the 2005 Disciplinary Action (Claims 1-4)**

 **1. Claims 1 through 4 must be dismissed for failure to state a claim because plaintiff requests restoration of  good-time credits**

The United States Supreme Court has made clear that a § 1983 action cannot be used to challenge, directly or indirectly, the length or validity of a prisoner's confinement, including deprivations of good-time credit, and that this can only be done using habeas corpus remedies. Edwards v. Balisok, 520 U.S. 641 (1997); Preiser v. Rodriguez, 411 U.S. 475 (1973); see Wilkson v. Dotson, __ U.S. __ 125 S.Ct. 1242 (2005); Heck v. Humphery, 512 U.S. 477 (1994); Wolff v. McDonnell, 418 U.S. 539 (1974).  In summarizing this line of cases (i.e., Preiser, Wolff, Heck, and Balisok), the Supreme Court stated the following in Dotson:

These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

125 S.Ct. at 1248.

In this case, plaintiff seeks, among other things, restoration of the good-time credits that were taken away as a result of the 2005 Disciplinary Action.  Because resolution of each of the first  four claims would call into question the validity of the denial of the good-time credits (and, hence, the length of his confinement), the first four claims must be dismissed for failure to state a claim.[1]  The only exception may be plaintiff's request for future relief with respect to Claim 1.  See.g., Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir. 1999).  However, Claim 1 is also subject to dismissal for the separate reason set forth below.

Consequently, it is recommended that Claims 2-4 be dismissed without prejudice; Claim 1 is further addressed below.

### 2. Claim 1 must be dismissed for failure to state claim because there is no constitutional right to an adjustment committee with three members

One of plaintiff's primary complaints is that the adjustment committee that considered the 2005 Disciplinary Action was compromised of only two members.  (Amended Complaint pp. 1-3, 11, 17) Plaintiff claims that the failure to have a third member violated his rights to due process and equal protection.  He requests, among other things, that the court issue an injunction requiring an

---

[1]  Claim 2 that due process required plaintiff be provided with certain witness statements and reports, as part of the process to adjudicate whether or not he should be held in segregated confinement,  is of doubtful validity in light of the Supreme Court's recent decision in Wilkinson v. Austin, __ U.S.__, 125 S.Ct. 2384 (2005).  The issue in Claim 3 as to whether due process requires, for this type of adjudication, that a prisoner be provided with exculpatory evidence presents a closer question.  See Piggie v. Cotton, 344 F.3d 674, 678-680 (7th Cir. 2003); Chavis v. Rowe, 643 F.2d 1281, 1287 (7th Cir. 1981).

adjustment committee that meets constitutional requirements along with restrictions as to who may serve on the committee.

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process.   A person seeking to invoke the procedural protections of the Fourteenth Amendment must point to one of these interests.  A liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' see, e.g., Vitek v. Jones, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., Wolff v. McDonnell, 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." Wilkinson v. Austin, __ U.S. __, 125 S.Ct. 2384, 2393 (2005).

If a liberty (or other protected interest) is established, then it must be determined what process is constitutionally due.  The Supreme Court has held that due process does not require any particular set of rigid rules; rather, the court will consider the sufficiency of the particular procedures employed using the following three-factor test set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335; Wilkinson v. Austin, 125 S.Ct. at 2395.

8

In those disciplinary hearings in which protected liberty interests are implicated, inmates are entitled only to the minimal safeguards afforded by the Due Process Clause, which are that an inmate be afforded "(1) at least twenty-four hours advance written notice of the claimed violation; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action taken; and (3) the right to call witnesses and present documentary evidence in defense when to do so would not be unduly hazardous to institutional safety or correctional goals." Jensen v. Satran, 651 F.2d 605, 607 (8th Cir. 1981) (citing Wolff v. McDonnell, 418 U.S. at 558-572, and Cummings v. Dunn, 630 F.2d 649, 650 n.4 (8th Cir. 1980) (per curiam)).  Prison rules may provide additional procedural safeguards, but an inmate cannot rely on them to state a constitutional claim. Phillips v. Norris, 320 F.3d 844, 846-847 (8th Cir. 2003) (no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations).

Based on the foregoing, it is evident that the Due Process Clause does not require a hearing before three or more people.  Further, even if the NDSP's regulations required three members, the violation of such a such a rule would not give rise to a federal constitutional claim.  Finally, plaintiff has no equal protection claim with respect to the adjustment committee having two, as opposed to three, members.  See Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2002) (elements of an equal protection claim).

Consequently, Claim 1 should be dismissed with prejudice for failure to state a claim.  Also, the claim is frivolous.

### D.    Claim related to the 2003 Civil Rights Action -  Claim 5 alleging failure to treat throat cancer

Plaintiff does not complain that he is suffering from some unknown malady or from symptoms that are not being treated by prison medical personnel.  Rather, plaintiff claims he is

suffering from throat cancer - a very specific diagnosis that can only be made by a medical professional and the same self-diagnosis the court rejected in the 2003 Civil Rights Action.  This being the case, and without more being pled, Claim 5 is barred by the judgment of the 2003 Civil Rights Action.  <u>See, e.g.</u>, <u>Allen v. McCurry</u>, 449 U.S. 90 (1980) (discussing concepts of claim and issue preclusion).  Further, without more being pled, plaintiff's claim amounts to nothing more than his continued disagreement with the diagnosis of the medical professionals who have been treating him.  As the court has previously explained, this does not constitute a cognizable constitutional claim.  <u>Kunze v. Rauser</u>, 332 F.Supp.2d at 1279.

Consequently, Claim 5 should be dismissed with prejudice for failure to state a claim and because the claim is frivolous.

### E.  Plaintiff's other claims

#### 1.  Claim 6 alleging that plaintiff was falsely convicted of an administrative violation in November 2002

At page 3 of the Amended Complaint, plaintiff contends that he was " placed in Segregation, upon lies which were put forth & done by state prisoner inmate, acting as (rats) for [penitentiary officials]."  At page 20, he again alleges that the threats to kill another inmate, which were the basis for his administrative conviction in November 2002, never happened and that the warden refused to allow him to take a lie detector test to prove that to be the case.

These complaints do not state a constitutional claim.  In particular, there is no constitutional entitlement to a lie detector test.  <u>Murray-Bey v. Thornburgh</u>, 1991 WL 222414, *5 (D.D.C. 1991).  Consequently, Claim 6 should be dismissed with prejudice.

Also, even if not dismissed for this reason, Claim 6 fails to state a claim for relief because plaintiff seeks restoration of good-time credits dating back to November 2002.  As previously

discussed, the fact that plaintiff seeks restoration of his good-time credits requires that he proceed first by way of a habeas action.

> **2.      Claim 7 alleging that plaintiff was held in extended segregated confinement in retaliation for his having commenced the 2003 Civil Rights Action**

In the 2003 Civil Rights Action, plaintiff challenged the fact that he had been held in extended administrative confinement and lost.  Consequently, any claim with respect to plaintiff's segregated confinement (disciplinary or administrative) through at least September 8, 2004, is barred by the prior judgment in the 2003 Civil Rights Action.  See, e.g., Allen v. McCurry, supra. Further, as already explained,  plaintiff may not contest in this proceeding his retaliation claim with respect to the 2005 Disciplinary Action, which resulted in a penalty of 60 days of disciplinary confinement, because he also demands restoration of his claim for good-time credits.

However, plaintiff claims that prison officials continued to hold him in segregated confinement following the dismissal of the 2003 Civil Rights Action up to his administrative conviction in the 2005 Disciplinary Action.   Also, he may be alleging that he continues to be held in segregated confinement after the expiration of the disciplinary confinement resulting from the 2005 Disciplinary Action.

To the extent plaintiff claims that this continued detention in segregated confinement (excluding the 60 days of disciplinary confinement) is the result of retaliation for his having prosecuted the 2003 Civil Rights Claim, plaintiff states a cognizable claim that can be litigated without calling into question the duration of his overall confinement.  Allah v. Seiverling, 229 F.3d 220, 224-225 (3rd Cir. 2000) (claim that extended administrative segregation was the result of retaliation for having filed a civil action states a denial of access-to-courts claim cognizable, in part, under the First Amendment); see Austin v. Terhune, 367 F.3d 1167, 1170-71 (9th Cir. 2004); Moore

v. Plaster, 266 F.3d 928, 931-933 (8th Cir. 2001). Consequently, it is recommended that plaintiff be permitted to proceed with Claim 7.

### 3. Claim 8 alleging that the duration and conditions of plaintiff's segregated confinement constitutes cruel and unusual punishment

"To establish an Eighth Amendment violation, a prisoner must show that the alleged deprivation, viewed objectively, is sufficiently serious and that the prison officials' actions, viewed subjectively, demonstrate a deliberate indifference to the prisoner's health or safety." Rahman X v. Morgan, 300 F.3d 970, 974 (8th Cir. 2002) (internal quotes omitted); see also Rodgers v. Thomas, 879 F.2d 380, 384 (1989) ("In order to establish an eighth amendment violation after incarceration, a prisoner must establish the unnecessary and wanton infliction of pain, mental or physical."). "A deprivation is sufficiently serious if it denies a prisoner the minimum civilized measures of life's necessity." Rahman X v. Morgan, 300 F.3d 970, 974 (internal quotes omitted); see Brown v. Nix, 33 F.3d 951, 954-955 (8th Cir. 1994).

In this case, plaintiff claims that he has been held in segregated confinement for more than three years dating back to November 2002. While any claim with respect to plaintiff's segregated confinement through at least September 8, 2004, is likely barred by the prior judgment in the 2003 Civil Rights Action (because the Eighth Amendment claim could have been litigated in that action), the length of plaintiff's prior segregated confinement may be material to whether or not there has been an Eighth Amendment violation since that time.

And, while a three-year period of time in administrative confinement probably does not state a constitutional claim, see Rahman X v. Morgan, 300 F.3d 970, plaintiff also alleges that, during this time, he has been held in a five by seven foot cell (35 square feet) and has been deprived of fresh air. With these additional allegations, it cannot be said beyond a doubt there is no set of facts that

plaintiff could prove to establish a cognizable Eighth Amendment claim. Cf. Hearns v. Terhune, 413 F.3d 1036, 1042-43 (8th Cir. 2005); Keenan v. Hall, 83 F.3d 1083, 1091-92 (9th Cir.1995); Peterkin v. Jeffes, 855 F.2d 1021, 1026-29 (3d Cir.1988); Davenport v. DeRobertis, 844 F.2d 1310 (7th Cir. 1988).  Consequently, it is recommended that plaintiff be permitted to proceed with Claim 8.

> **4.     Claim 9 alleging that the penitentiary's legal assistance program does not meet constitutional standards**

Plaintiff claims that the penitentiary's legal assistance program does not meet constitutional standards.  Essentially, this a denial of access-to-courts claim, and, for such a claim, it is not sufficient to merely allege a denial of access to a law library or to law trained persons, even if the denial is systemic.  Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996).  "Instead, the [prisoner] must show the lack of a library or the attorney's inadequacies hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights."  Id.  (citing Lewis v. Casey, 518 U.S. 343, 355).  In other words, the prisoner must show prejudice or an actual injury.  Id.

In this case, Claim 9 should be dismissed without prejudice because there is no allegation that plaintiff has suffered prejudice to a nonfrivolous legal claim.  Sanders v. Sheahan, 198 F.3d 626, 630 (7th Cir.1999) (prisoner must "allege injury or prejudice" to state a claim of denial of access to the courts); see Lewis v. Casey, 518 U.S. at  349-355; Moore v. Plaster, 266 F.3d at 933.

> **5.     Claim 10 alleging interference with legal mail**

In one sentence, plaintiff claims that the regulations governing the inspection of mail with attorneys are "unconstitutionally restrictive," that such legal mail is sometimes opened, and, possibly also, that legal mail is sometimes not sent.  However, these allegations are too speculative and conclusory to state a claim.  Cf. Cooper v. Schriro, 189 F.3d 781, 784 (8th Cir. 1999); Atkinson

v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996).   The regulations that are claimed to be unconstitutionally restrictive are not identified in any fashion.  Plaintiff has not pled sufficient facts to make out a claim with respect to opening legal mail because opening legal mail is not, per se, a violation of the Constitution if done under the proper circumstances.  See Wolff v. McDonnell, 418 U.S. 539, 574, 576-77 (1974); Cody v. Weber, 256 F.3d 764, 768 (8th Cir. 2002).  Finally, plaintiff alleges no specific instance of "legal mail" not being sent, much less any definitive allegation that it was his legal mail that was not sent, as opposed to some other prisoner's mail.  In fact, it is not even clear whether the allegation of mail not being sent refers to legal mail because of the vagueness of the allegation and the fact that an attachment to the amended complaint refers to one instance of a letter not being sent to a newspaper editor, which clearly was not legal mail.

Consequently, it is recommended that Claim 10 be dismissed without prejudice.  If plaintiff has anything more definitive, he can move to amend his complaint.

### 6.    Claim 11 alleging interference with non-legal mail

Plaintiff claims that prison officials are interfering with non-legal mail.  In attachments to the amended complaint, he complains about two pieces of mail being interfered with, one being a letter sent by his sister and one being a letter to the editor of the Fargo Forum that plaintiff claims prison officials did not allow to be sent.

Generally speaking, prisoners retain constitutional rights that are not inconsistent with their prisoner status, but subject to prison officials being able to limit the exercise of those rights by regulation or action as necessary to meet the legitimate needs of the penal system.   E.g., Murphy v. Missouri Department of Corrections, 372 F.3d 979, 986-987 (8th Cir. 2004); see Wolf v. McDonnell, 418 U.S. 539, 556-563 (1974); Procunier v. Martinez, 416 U.S. 396, 404-407 (1973).

One of the rights that prisoners retain upon incarceration is the right of free speech under the First and Fourteenth Amendments.   It is generally agreed  that this encompasses the right of prisoners to send and receive mail.  E.g.,  Murphy, 372 F.3d at 986-987; Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1026-27 (8th Cir. 2004) ("[w]hile prisoners have a right to send and receive mail . . . ); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999); Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995); Heimerle v. Attorney General, 753 F.2d 10, 12-13 (2d Cir. 1985); see Thornburgh v. Abbot, 490 U.S. 401, 407 (1989).   The right of prisoners to send and receive mail, however, is not absolute and may be limited by prison regulations that are reasonably related to legitimate penological interests.  Thornburgh, 490 U.S. at 413-414; Murphy, 372 F.3d at 986-987. Further, a prisoner's mail may be subjected to screening for security reasons.  Ortiz, 368 F.3d at 1026-27.

Construing the complaint liberally, it cannot be said beyond a doubt that there is no set of facts that plaintiff could prove to establish a constitutional violation of his right to send and receive mail.  Consequently, Claim 11 should be allowed to go forward.

### 7. Claim 12 alleging confiscation of plaintiff's reading material

Plaintiff contends that penitentiary officials have confiscated his reading materials in violation of the First Amendment. Prisoners retain a First Amendment right to newspapers, magazines, and other reading material.  However, again, this right is subject to regulations that are reasonably related to legitimate penological interests.  See Banks v. Beard, 399 F.3d 134, 139-147 (3rd Cir. 2005); Sterling/Sayyed v. Banks, 72 Fed. Appx. 504, 506 (8th Cir. 2003) (citing Cooper v. Schriro, 189 F.3d 781 (8th Cir. 1999)).   For example, the Eighth Circuit has upheld a prison regulation that limits receipt by prisoners of incoming reading material (as opposed to material

available in the prison library) to that which comes from the publisher directly.  Cotten v. Lockhart, 620 F.2d 670 (8th Cir. 1980).

In this case, there might very well be legitimate reasons for the alleged confiscation of reading materials, assuming such confiscation took place.  However, for purposes of initial review, plaintiff has stated a cognizable First Amendment claim and Claim 12 should be allowed to go forward.

### F.    Plaintiff's requests for relief and status of party defendants

It is difficult to decipher from plaintiff's amended complaint who he is intending to sue and in what capacity.  Plaintiff lists certain persons as defendants in the caption, but refers to additional persons in the body of the complaint, including notably the NDSP warden.  Also, at no place in the amended complaint does plaintiff indicate that he is suing anyone in their individual capacities.

The Eighth Circuit imposes a strict rule that a complaint against a public official or employee must explicitly state it is being brought against the person in the person's individual capacity or else the complaint will only be construed as suing the person only in the person's official capacity - no matter how clear the intent may be to the contrary.  E.g., Johnson v. Outboard Marine Corporation, 172 F.3d 531, 535 (8th Cir. 1999); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989).[2]  Consequently,

---

[2]  Johnson v. Outboard Marine Corporation summarizes the Eighth Circuit's rule as follows:

This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity. *See Artis v. Francis Howell North Band Booster Ass'n Inc.*, 161 F.3d 1178, 1182 (8th Cir.1998); *Murphy*, 127 F.3d at 754. Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir.1989); *Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619-20 (8th Cir.1995). Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her official capacity is merely a suit against the public employer. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

at this point, plaintiff may only proceed with his demands for injunctive and other equitable relief since the named defendants are all employees of the State of North Dakota and the Eleventh Amendment immunity bars any claim for damage relief against the defendants in their official capacities.  E.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  If plaintiff does not agree, he can seek to amend his pleadings accordingly.  Further, if plaintiff does seek to amend his complaint, he should identify separately for each claim those individuals he claims were involved with respect to each claim.

Under appropriate circumstances, prospective injunctive relief can be ordered against state officials in the event of a violation of § 1983.  E.g., Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997); Nix v. Norman, supra.  Consequently, in the absence of further amendment, plaintiff should be permitted to proceed seeking injunctive or other appropriate equitable relief with respect to the cognizable claims identified above.

## III.   CONCLUSION, ORDER, AND RECOMMENDATION

It is hereby **ORDERED** that plaintiff's typed amended complaint be filed by the Clerk of Court, along with the attachments from the prior complaints, as the operative pleading and that a copy be sent to the plaintiff with the attachments so that he knows what the court has included as the operative pleading.

Also, having conducted an initial review of plaintiff's complaint, and viewing the mentioned claims in a light most favorable to the plaintiff, it is hereby **RECOMMENDED**:

---

172 F.3d at 535.  Among the federal circuit courts, the Eighth Circuit's "express statement" requirement is a distinctly minority position.  E.g., Moore v. City of Harriman, 272 F.3d 769, 773 (6th Cir. 2001) (rejecting the Eight Circuit's position and summarizing the positions of the various circuit courts).

1.    Plaintiff be permitted to proceed with the following claims, but limited to requests for injunctive or other appropriate equitable relief:

   a.    Claim 7 alleging prison officials have held plaintiff in extended segregated confinement in retaliation for his having commenced the 2003 Civil Rights Action.

   b.    Claim 8 alleging that the duration and conditions of plaintiff's segregated confinement constitutes cruel and unusual punishment in violation of the Eighth Amendment.

   c.    Claim 11 alleging interference with non-legal mail.

   d.    Claim 12 alleging confiscation of plaintiff's reading material in violation of the First Amendment.

2.    The following claims be dismissed with prejudice for failure to state a claim and because the claims are frivolous:

   a.    Claim 1 alleging plaintiff's rights to due process and equal protection were violated because the penitentiary's disciplinary committee consisted of two, as opposed to three, members.

   b.    Claim 5 alleging that plaintiff has been denied treatment for throat cancer in violation of his Eighth Amendment Rights.

3.    The following claims be dismissed without prejudice:

   a.    Claim 2 alleging that the disciplinary committee deprived plaintiff of his due process and equal protection rights during the 2005 Disciplinary Action in that it failed to provide him with written statements obtained from penitentiary guards and "force reports" prior to his disciplinary hearing.

18

    b.      Claim 3 alleging that the disciplinary committee deprived plaintiff of his due process and equal protection rights during the 2005 Disciplinary Action in that it failed to provide plaintiff with exculpatory investigative reports prior to his disciplinary hearing.

    c.      Claim 4 alleging that the 2005 Disciplinary Action was brought by prison officials in retaliation for plaintiff having commenced the 2003 Civil Rights Action and was based upon lies and false information provided by prison officials.

    d.      Claim 6 alleging plaintiff was falsely convicted of an administrative violation in November 2002 resulting in his being placed in segregated confinement.

    e.      Claim 9 alleging that the penitentiary's legal assistance program does not meet constitutional standards.

    f.      Claim 10 alleging interference with legal mail.

4.      Plaintiff's requests for damages be dismissed because the Eleventh Amendment bars any damage relief given that the defendants are only sued in their official capacities.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 4th day of January, 2006.


/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.,
United States Magistrate Judge