**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| David Robert Kunze, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING DEFENDANTS'** |
| vs. | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| Leann Bertsch, Director of Corrections; | ) | |
| Tim Schuetzle, Director of Prisons; | ) | |
| Robert Coad, Deputy Warden of Programs; | ) | |
| Corky Stromme, Chief of Security; | ) | |
| Mirna Stromme, Prison Mail Room Clerk; | ) | |
| James Sayler, Prison Guard;  Shaun Fode, | ) | |
| CCW, Prison Guard; Pat Ross, Prison | ) | Case No. 1:05-cv-104 |
| Guard; Jason Brazell, Prison Guard; | ) | |
| Randy Smid, Prison Guard; Eric Hasby, | ) | |
| Prison Guard; Steve Foster, Case Manager, | ) | |
| A.S. Unit; and Troy Gross, Prison Guard, | ) | |
| | ) | |
| Defendants. | ) | |

_____

On February 8, 2007, Defendants Leann Bertsch, Timothy Schuetzle, Robert Coad, Corky Stromme, Mirna Stromme, James Sayler, Shaun Fode, Pat Ross, Jason Brazell, Randy Smid, Eric Hasby, Steve Foster, and Troy Gross filed a Motion for Summary Judgment.  For the reasons set forth below, the motion is granted.

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

The plaintiff, Robert David Kunze (Kunze), is an inmate at the North Dakota State Penitentiary in Bismarck, North Dakota.  On August 29, 2005, Kunze filed a pro se complaint asserting that the Defendants had violated his civil rights pursuant to 42 U.S.C. § 1983.  Magistrate Judge Charles S. Miller Jr. reviewed Kunze's complaint as mandated by the Prisoner Litigation

Reform Act, 28 U.S.C. § 1915A(a), and concluded that Kunze had alleged four cognizable claims: (1) whether the duration and conditions of confinement in administrative segregation denied Kunze of his Eighth Amendment rights; (2) whether the confinement in administrative segregation was in retaliation for Kunze exercising his First Amendment right to seek redress from the courts; (3) whether prison officials interfered with Kunze's non-legal mail in an impermissible, unconstitutional manner; and (4) whether prison officials confiscated Kunze's reading material in violation of the First Amendment.   On January 4, 2006, Magistrate Judge Miller issued a Report and Recommendation and recommended that Kunze be allowed to proceed on those four claims.   On January 12, 2006, the Court adopted Magistrate Judge Miller's Report and Recommendation and directed the Clerk of Court to file Kunze's complaint.

###### B.  KUNZE'S CLAIMS

####### 1.  ADMINISTRATIVE SEGREGATION

On April 13, 1999, Kunze was placed under the jurisdiction of the North Dakota Department of Corrections and Rehabilitation and is currently housed at the North Dakota State Penitentiary in Bismarck, North Dakota.  See Docket No. 40.  Kunze has a history of felony offenses resulting in incarceration in county jails and numerous state and federal prisons.  He also has a history of at least six escapes from detention.  Kunze's current sentence was imposed for theft and robbery while on escape from a county jail.

On November 6, 2002, David Kunze was placed in administrative segregation after allegedly threatening to kill another inmate.  Id.  North Dakota State Penitentiary officials conducted an investigation and concluded that there was evidence showing that Kunze had threatened to kill

another inmate.   Consequently, Kunze was transferred to disciplinary detention with the understanding that he would return to administrative segregation once he completed his disciplinary detention.

Kunze contends that the Defendants lied about all of his actions in order to get even with him.  Kunze states in his complaint:

> And it was done with this idea, just to get even with Petitioner/Mr. Kunze.  And, what was the driving force behind this?  Was that Petitioner in fact, had filed this 42 U.S.C. § 1983 Civil Rights Act & was filed, against this North Dakota State Penitentiary, Medical Department!  Also!  It is, a fact!  This, Warden Schuetzle's idea to just get even with me for example.  Was, for my filing this 42 U.S.C. § 1983 Civil Right Petition against this State Prison, plain simple which is what took place and why we point out this said Federal Magistrate Judge.  And so, this was also the driving force which has kept me in this A.S. Unit, going on a continued 3 years and all because, we filed this Lawsuit against Warden Tim Schuetlze and a few others at this said State Penitentiary.

See Docket No. 17-1, ¶¶ 6-7 (errors in original).

The Defendants contend that the rationale for returning Kunze to administrative segregation was that he posed a continuing danger to the general penitentiary population.  In mid-September 2004, Kunze was released from administrative segregation to the general population on an administrative segregation contract, requiring certain behavior from him.  See Docket No. 40. Within a month, Kunze had written a letter threatening the warden and, as a result, Kunze was returned to administrative segregation.  On an escalating basis, Kunze both verbally threatens and physically assaults correctional officers.  Kunze also frequently attacks other staff or other inmates with "shit bombs" when they walk by the front of his cell.  The record reveals that Kunze regularly threatens to kill staff or inmates, almost on a daily basis.  See Docket No. 41-1, p. 3.

On September 13, 2005, Kunze was transferred to the Special Assistance Unit at the James River Correctional Center, a corrections facility located in Jamestown, North Dakota.  See Docket

3

No. 40.  This facility is the only "inpatient psychiatric unit" to house and treat mentally ill inmates within the Department of Corrections and Rehabilitation.  Although initially compliant and friendly, Kunze continued to display anger at North Dakota State Penitentiary officials including the use of foul language and threats.  For example, Kunze complained to the Special Assistance Unit's staff about Warden Schuetzle and claimed that when he was released he was going to "level out the pen in Bismarck."  See Docket No. 41-2, p. 9.  When some items were pulled from Kunze's cell, he threatened staff by stating that if his property was not returned, they "would know what trouble is." Id.  He then pointed a finger at the correctional officer with whom he was talking and stated "I'm not fucking joking buddy."  Id.  One month after he was placed in the Special Assistance Unit, Kunze stated that he did not want to talk to officers anymore and "that the war was on."  Id. at 8. Finally, on October 21, 2005, he threatened to kill all of the staff when he was released.  Id.

On November 18, 2005, Kunze was returned to administrative segregation at the North Dakota State Penitentiary because staff believed the Special Assistance Unit staff could offer no further assistance to Kunze.  See Docket No. 41-2, p. 8.  Upon his return to the penitentiary, Kunze immediately began receiving incident reports for threats and assaultive behavior on staff.  Id. at 5. For example, on November 27, 2005, Kunze snatched a pen out of a corrections officer's hand and called him a "Navy fag cocksucker."  Id.  On November 28, 2005, Kunze threatened to "shit bomb" a corrections officer and threw a glass of water at the officer.  Id.

While in administrative segregation, Kunze was afforded an opportunity to meet with the penitentiary's Administrative Segregation Committee once a month to discuss his status and to present his case for a return to the penitentiary's general population.  Kunze was also given a chance to meet with the warden once every four months.  Kunze has rarely agreed to meet with the warden

and states that he has only agreed to see the warden approximately two times.  <u>See</u> Docket Nos. 43-1, and 46, p. 7.

## 2.      CONDITIONS OF CONFINEMENT

In his complaint, Kunze contends that he:

> is being confined in this segregation cell for over [3] three long years!  And in a cell measuring five feet by seven----feet long and where up to this point in time, does constitute cruel–& very unusual punishment and which is covered by the 8TH Amendement in fact Constitutional Right's, aganist being treated as a human-being, in these action's take by state employees against Petitioner /Mr. Kunze.

<u>See</u> Docket No. 17-1, p. 3 (errors in original).  Kunze further contends he "has [NOT] for example received any— fresh-air in all this time."  <u>Id.</u> (errors in original).

The Defendants contend that while in administrative segregation, Kunze is offered one hour of outdoor exercise each weekday, Monday through Friday.  <u>See</u> Docket No. 41-1, ¶ 21.  Kunze has rarely taken advantage of this opportunity.  Kunze is provided with an opportunity to leave the cell to take a shower three times a week.  Again, Kunze rarely takes advantage of this out-of-cell time.  Kunze generally refuses to leave his cell to go for medical visits, to use the telephone, or to have a haircut, all of which out-of-cell activities are available to him.  Further, while in administrative segregation and disciplinary detention, Kunze is provided with access to his legal documents, writing materials, access to the law librarian, and access to law library books.  <u>See</u> Docket No. 41-1, ¶ 22.  Kunze also has access to books from the North Dakota State Penitentiary library, and may have a TV in his cell when on administrative segregation status and during his breaks from disciplinary detention status.  The Defendants contend that Kunze's cell in administrative

segregation is 55 square feet with 35 square feet of unencumbered space.  See Docket No. 41-1, ¶ 20.

Because of Kunze's behavior, he has been placed in disciplinary detention often and has accumulated time to be served in disciplinary detention into 2008.  See Docket No. 41-1, ¶ 18.  Although Kunze served some of his disciplinary detention time in an administrative segregation cell, in November 2006, he was transferred to a disciplinary detention cell in the North Unit after he spread feces all over his administrative segregation cell.  See Docket No. 4-21 p. 1.  He has been housed in the North Unit disciplinary detention cell since then.  See Docket No. 41-1, ¶ 20.  The Defendants' contend that the North Unit disciplinary detention cell is 80 square feet with 45 feet of unencumbered space.  Id.  Kunze has the opportunity to exercise outside and to have showers while in disciplinary detention.  Id. at ¶ 21.  He is allowed to have reading material and legal material in his cell.

While on disciplinary detention, an inmate loses access to other personal possessions.  Because of his situation and the extended amount of disciplinary detention time accrued, Kunze is taken off disciplinary detention status every 15 days for 24 hours so that he can have time with his possessions in his cell before serving additional disciplinary detention time.  See Docket No. 41-1, ¶ 18.  However, Kunze continues to accrue disciplinary detention time because of his threats and other behavior problems, whether in administrative segregation or in disciplinary detention.  From mid-2005 through 2006, Kunze received 46 Class A (Major) Incident Reports.  Id. at ¶ 17.  Kunze's threatening behavior continues today.

**3.**    **NON-LEGAL MAIL**

Kunze's complaint contains numerous and varied contentions of interference with his mail. Kunze contends that "[i]t, is a fact that by their Policies unconstitutional Policies, they have band all use of what is considered ["catalogues"] and they give no bases for their banding of such a publication." See Docket No. 13, p. 9.  (errors in original).  Kunze also contends that "concerning the opening by this Prison—Mail Room Clerk, and [certain said letters] were in fact & fact is! Sometimes are not sent or are left said Prison!"  See Docket No. 10, p. 9.  (errors in original). Further, Kunze also contends:

> [t]hat there is an on-going malicious-indifference and serious intent, to destroy certain U.S. Mail when it is leaving we-point out here, for an example?  this State Prison Mail Room at the Prison!  And, pointing out here as well for another, example!  This, U.S. Mail does include legal letters along with this.  Example: I wrote a letter to this Editor at this Fargo Forum and which we' all well know is a newspaper.  This letter we sent addressed as such!  Letter To The Editor . . . Dated for Tuesday/ October 7TH, 2003.  And so here is when we point out that this letter never in fact was ever—received by this receiver or for, whom letter was sent thereto!
>
> Noting Here, along with this as well!  We sent another which had been addressed to this address and sent, TO:
>
> TO:
> Mr. Patrick J. Fisher, Clerk
> United States Court of Appeals of
> The 10TH Circuit Federal Court
> United States Courthouse
> 1823 - Stout Street
> Denver, Colorado -----[80257]
>
> As is so noted here!  This letter never get to where it was addressed to!  And I even made a note that stated, "please let me know, when you receive this letter & my Legal Affidavit I had sent along to this Federal Court Cleck!"

See Docket No. 17-1, p. 3. (errors in original).

Shortly after Kunze was incarcerated at the North Dakota State Penitentiary in 2002, the mail clerk began reviewing Kunze's incoming and outgoing mail.  See Docket No. 41-1, ¶ 27.  Because Kunze continuously complains that the clerk interferes with his mail, any mail that comes to Kunze or goes out from Kunze is recorded in a log.  None of Kunze's incoming or outgoing personal letters or legal mail have been withheld.  Despite his numerous complaints, Kunze has only appealed one grievance concerning his incoming mail.

On April 5, 2005, Kunze filed a grievance alleging that a catalog about collector cars sent to him by a friend had been withheld.  See Docket No. 41-18.  The mail clerk advised Kunze that inmates are not allowed to receive catalogs that contain items for sale.  Id.  Further, any publication must come directly from the publisher.  The Defendants contend that the rules are for the safety and security of the institution and to prevent contraband from entering the institution hidden in publications sent by friends or family.  Kunze appealed this grievance, but his appeal was denied.  See Docket No. 41-1, ¶ 29.

### 4.    CONFISCATION OF READING MATERIAL

In his complaint, Kunze contends that magazines have been removed from his cell in violation of his constitutional rights.  In pertinent part, Kunze provides:

> Without any fore-warning!!  These prison guards search–these prison cells and while they do this for example?  They'll take whatever comes across their fancy, and they do this, just to [FUCK–with people and, they try like Hell, to piss you off, and just so they are able, write you up, and on some Bull Shit Report]," [unquote]!!  And so, every time, they always come to my cell & to just to take [My] Books or such Magazines that come from this Kenneth Copeland Ministries, for jusy an example here?  And these prison/guards, when they take these Magazines or Newspapers.  They always say, "they are taking these ead Material, because it goes against Prison Policy!"

<u>See</u> Docket No. 17-1, p. 21 (errors in original).  Kunze further states that "I love to read such magazines as from this Kenneth Copeland Ministries and of which he sends out every month, to this prisoner, a Mr. James Charles Thompson...." <u>Id.</u>

On August 12, 2005, during a shakedown of Kunze's cell, two magazines were found that had been sent to another inmate.  <u>See</u> Docket Nos. 41-1, ¶ 23, and 41-4.  The Inmate Handbook restricts inmates from possessing property of another inmate.  <u>See</u> Docket No. 41-8.  The magazines were confiscated from Kunze's cell.  <u>See</u> Docket No. 41-1, ¶ 23.  Kunze became very angry about the removal of the magazines and assaulted the correctional officers attending him.  Kunze received an incident report for this action and appealed it to the warden and the Director of the Department of Corrections.

### C.    <u>MOTION FOR SUMMARY JUDGMENT</u>

On February 8, 2007, the Defendants filed a motion for summary judgment.  <u>See</u> Docket No. 37.  The Defendants contend that Kunze cannot prove that he is unconstitutionally being held in administrative segregation in retaliation for filing a court action against some prison official and employees, nor that the conditions of his confinement in administrative segregation are unconstitutional.  The Defendants also contend that the restrictions on Kunze's right to receive mail are reasonably related to legitimate penological interests and that the rule prohibiting an inmate from possessing another inmates property is reasonably related to maintaining security.

On February 13, 2007, Kunze filed a brief in opposition to the Defendant's motion for summary judgment and essentially contends that the Defendants statements are not true.  In addition, Kunze noted in his brief that he had not received Attachment 1-A to the affidavit of Timothy

Schuetzle (Docket No. 41) that was filed in support of the Defendants' motion for summary judgment. Kunze was served with Attachment 1-A on February 13, 2007. <u>See</u> Docket No. 44. The Court gave Kunze until March 12, 2007, to file a supplemental response, and on March 7, 2007, Kunze filed a supplemental response.

## II.   <u>STANDARD OF REVIEW</u>

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Graning v. Sherburne County</u>, 172 F.3d 611, 614 (8th Cir. 1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Quick v. Donaldson Co., Inc.</u>, 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed.R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

III.   **LEGAL DISCUSSION**

A.   **ADMINISTRATIVE SEGREGATION**

In Jones v. Mabry, 723 F.2d 590, 594 (8th Cir. 1983), the Eighth Circuit recognized that the placement of an inmate in administrative segregation is not inherently unconstitutional when done for non-punitive reasons and the inmate was afforded an opportunity to request release from such confinement.

> It is safe to say that in all prisons, except perhaps some extremely minimum security institutions, it is found to be absolutely necessary for a number of non-punitive reasons to segregate individual inmates from the general prison population, and to hold them in segregated status for varying or indefinite periods of time. [citations omitted.] As long as there is a procedure for reviewing periodically the situation of inmates who are in administrative segregation . . . due process is satisfied, and no pre-deprivation hearing is required by the federal constitution.

Jones v. Mabry, 723 F.2d 590, 594.  However, the Court added that an inmate is entitled to a pre-deprivation hearing when he is placed in administrative segregation with the intent to punish him for past conduct.  Id.

Kunze complains that he has been held unconstitutionally in administrative segregation for over three years.  The Defendants contend that Kunze continues to be housed in administrative segregation for the purposes of safety for staff and other inmates.  The record clearly establishes that Kunze was initially placed in administrative segregation in response to threats he made to another inmate.  After being found guilty of making the threats and serving time in disciplinary detention as punishment, Kunze was returned to administrative segregation based upon the reasonable belief that he posed a security risk because he continued to threaten other inmates, penitentiary staff, and the warden.

The record clearly reveals that Kunze has remained in administrative segregation because he has continuously displayed uncooperative, angry, assaultive behavior and continues to make threats to staff and to the warden.  Beginning in mid-2005, Kunze began exhibiting negative behavior on an almost daily basis, including the use of foul language in response to staff requests, threats of physical harm to staff and inmates, both physically when he could reach them and by throwing "shit bombs" and other liquid at them.  Between mid-2005 and the end of 2006, Kunze received 46 major Incident Reports, almost entirely for threats and assaults on staff or other inmates. Thus, it is clear that Kunze's placement in administrative segregation is for the safety of staff and other inmates and in response to direct and indirect threats and violent actions made by Kunze.

Further, there is no dispute that Kunze has been, and continues to be,  provided with monthly opportunities to meet with the  Administrative Segregation Committee to discuss his status and to make a case for his return to the general inmate population.  Kunze also has the opportunity to meet with the warden once every four months to make a case for his return to the general population. However, Kunze has voluntarily chosen not to take advantage of these opportunities and has stated that he is not "going to play their little games period."  See Docket Nos. 43-1, p. 4, and 46, p. 3.

The Defendants contend, and the Court agrees, that without such meetings, along with the overwhelming evidence in the record which establishes that Kunze poses a direct threat to others, Kunze cannot be safely placed in a lesser restrictive environment at the North Dakota State Penitentiary.  Kunze's claim that his civil rights have been violated as a result of being housed in the administrative segregation unit is devoid of merit.  There is a specific procedure in place for a periodic review of Kunze's status in administrative segregation so Kunze's due process rights are

protected.  The fact that Kunze has chosen not to take advantage of the numerous opportunities afforded him to meet with the Administrative Segregation Committee and the warden to discuss his placement status is an extremely misguided and irresponsible decision that he must live with.  The Court expressly finds that Kunze's placement in administrative segregation is for the safety of staff and other inmates and, as such, does not violate his constitutional rights.


###   B.      RETALIATION

Kunze also complains that he is being held in administrative segregation as retaliation for exercising his constitutional right to access the courts because he filed an action against prison officials in 2004.  It is clear that prison officials cannot impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional rights.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1986).  "However, if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail."  Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993).  If the prison officials provide "some evidence" to support the disciplinary action, the inmate will not prevail on his retaliatory claim.  See id. at 739 (providing that the standard of review of a disciplinary committee's determination that a prisoner committed a violation is the "some evidence" standard).

The record overwhelmingly reveals that Kunze has violated and continues to violate prison rules and regulations.  Because Kunze's claim of retaliatory discipline is based on actual violations of prison rules and regulations, the claim fails.  The Court finds that Kunze's claim of retaliatory

discipline fails as a matter of law because the disciplinary actions taken against Kunze have been imposed for violations of prison rules or regulations.

### C.   CONDITIONS OF CONFINEMENT

The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 . . . until such administrative remedies as are available are exhausted."  This applies to all inmates in "any jail, prison, or other correctional facility."  42 U.S.C. § 1997e(a).  The Supreme Court has interpreted this section to apply to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The exhaustion requirement is mandatory.  Id. at 529.  Further, the requirement that all "available" remedies be exhausted requires that the prison grievance procedures be completed prior to the filing of any Section 1983 claim.  Johnson v. Jones, 340 F.3d 624, 627-628 (8th Cir. 2003); see also Wright v. Morris, 111 F.3d 414, 417 n.3 (6th Cir. 1997) (providing that grievance procedures are not exhausted when an inmate files a grievance but fails to appeal the denial of the grievance to the highest possible administrative level).  A failure to exhaust administrative remedies precludes a court from proceeding with the action.  Porter v. Nussle, 534 U.S. 516, 529 (2002).  If an inmate has not identified that he has exhausted all available remedies before bringing the action, the Court must dismiss the action.

The Defendants contend that Kunze has failed to exhaust his administrative remedies with regard to his claims that the conditions of confinement in his cell or the cell size violate his constitutional rights.  It appears from the record that Kunze has failed to exhaust his administrative

remedies regarding the conditions of his confinement and, therefore, Kunze is precluded from raising those issues. However, as discussed below, even if Kunze had exhausted his administrative remedies with regard to the conditions of his confinement, the Court finds that the conditions do not violate Kunze's constitutional rights.

### 1.    SIZE OF THE CELLS

In Rhodes v. Chapman, 452 U.S. 337 (1981), the United States Supreme Court reviewed the limitations the Eighth Amendment placed on the conditions in which a state may confine a prisoner and held constitutional the double celling of inmates in a 63 square foot space originally designed for one inmate. The Supreme Court recognized that "[c]onfinement . . . is a form of punishment subject to scrutiny under the Eighth Amendment standards," and that the reviewing court must look to whether the circumstances of the inmate are such that they "either inflict[] unnecessary or wanton pain or [are] grossly disproportionate to the severity of crimes warranting imprisonment." Id. at 345, 348. The Supreme Court rejected the district court's reliance on experts who provided standards as to what is a desirable prison cell size and as to what conditions "establish contemporary standards of decency." Id. at 350, n.13. The Supreme Court also reiterated its holding that the opinions of experts "simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." Id. (citing Bell v. Wolfish, 441 U.S. 520, 543-544 n.27 (1979)); see also Hoptowit v. Ray, 682 F.2d 1237, 1256-57 (9th Cir. 1982) (rejecting district court's "constitutionalization" of the [American Correctional Association's] standards for cell size in Washington State Prison). Finally, the Supreme Court cautioned the lower courts when making Eighth Amendment judgments that the courts' inquiries "spring from constitutional requirements

15

and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility."  Rhodes v. Chapman, 452 U.S. 337, 351 (1981) (internal citation omitted).

A number of courts have reviewed constitutional challenges to cell size in light of Rhodes, and found varying sizes of cells constitutional.  See, e.g., Keenan v. Hall, 83 F.3d 1083, 1091-92 (9th Cir. 1996) (providing that the constitution does not guarantee an inmate more than the 54 square feet he was provided in his cell); Schwarz v. Zavaras, No. 96-1131, 1996 WL 494413, at *2 (10th Cir. (Colo.) Aug. 27, 1996) (affirming that a cell of 54 square feet was constitutional for an individual housed in administrative segregation); Dohner v. McCarthy, 635 F. Supp. 408, 425 (C.D. Cal. 1985) (holding that double celling in a 99 square foot cell is constitutional, even though cell size is greatly reduced when the second bed is lowered); Watson v. Ray, 90 F.R.D. 143, 149 (S.D. Iowa 1981) (upholding constitutionality of 48 square foot cell for general population inmates); Peterkin v. Jeffes, 855 F.2d 1021, 1026-27 (3rd Cir. 1988) (upholding district court's finding that 71 square feet and 60 square feet for cells housing death row and administrative segregation inmates to be more than constitutionally adequate).  The Court finds these cases to be persuasive.

The American Correctional Association's standards currently recommend that administrative segregation inmates' cells be 80 square feet with 45 square feet of unencumbered space.  Kunze claims that his cell is only 35 square feet (five feet by seven feet).[1]  The Defendants contend that the cell in the administrative segregation unit is 55 square feet of which 35 square feet is unemcumbered

---

[1]Kunze appears to have been at the James River Correctional Center at the time he wrote the complaint, but does not appear to distinguish between cell size at the James River Correctional Center and the North Dakota State Penitentiary.  See Docket No. 17.  Kunze was at the James River Correctional Center from September 13, 2005, to November 18, 2005, and the proposed complaint was first filed on September 20, 2005.  The record is devoid of the size of the cells at the James River Correctional Center.

space and that when Kunze is moved to the Disciplinary Detention cell in the North Unit, his cell is 80 square feet of which 45 feet is unencumbered space.  See Docket No. 41-1.

As the Supreme Court has indicated, the American Correctional Association's standard is not a mandatory standard, but only a recommended standard.  Based on the Supreme Court's holding in Rhodes and current case law, the Court finds that, regardless of whether Kunze's cell is 35 square feet or 55 square feet, the Constitution does not guarantee Kunze more space.  The Court finds as a matter of law that the size of Kunze's cell does not constitute cruel and unusual punishment under the Eighth Amendment to the Constitution.


## 2.    AMOUNT OF OUTDOOR EXERCISE

Kunze contends that he has been held for three years in administrative segregation and "has [not] for example received any - fresh air in all of this time. . . ."  See Docket No. 17-1, p. 4.

The Eighth Amendment prohibits prison officials cruel and unusual punishment of inmates. Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001).  A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened."  Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992).  To prevail, an inmate alleging lack of exercise must show that the prison officials "were deliberately indifferent to his exercise needs."  Id. 448-449.  In this regard, courts have held that merely limiting the number of hours an inmate is permitted for exercise, whether outdoor or not, is not unconstitutional per se.  See Peterkin v. Jeffes, 855 F.2d 1021, 1028 (3d Cir. 1988) (holding that two hours per day of outdoor exercise is not considered cruel and unusual punishment); Ruiz v. Estell, 679 F.2d 1115, 1152 (5th Cir. 1982) (holding that daily exercise of one hour per day does not violate the Eighth Amendment).

The Eighth Circuit in <u>Wishon v. Gammon</u>, 978 F.2d 446 (8th Cir. 1992), held that plaintiff, a prisoner who was permitted only 45 minutes of exercise per week and 30 minutes per week for showers, was not unconstitutionally deprived of out-of-cell exercise time as he could not show that he had suffered any injury or decline in health.  <u>Id.</u> at 448-449; <u>see</u> <u>also</u> <u>Hasona v. Groose</u>, 80 F.3d 298, 306 (8th Cir. 1996) (upholding prison officials limitation on outdoor recreation to three hours of exercise per week in an enclosed area out-of-doors on inmate's failure to show that prison officials were deliberately indifferent to his exercise needs so as to impact his health); <u>McDonald</u> <u>v. Armontrout</u>, 908 F.2d 388, 391-392 (8th Cir. 1990) (holding that limiting outdoor exercise for close custody inmates to four hours per week at a smaller outdoor exercise facility for medium custody inmates without access to basketball, football, or baseball is constitutional).  Further, an inmate who fails to take advantage of the exercise opportunities he is offered is held accountable for any ill effects arising from lack of exercise and cannot shift liability to prison officials.  <u>See</u> <u>Hosna</u> <u>v. Groose</u>, 80 F.3d 298, 306 (8th Cir. 1996).

The record clearly establishes that Kunze is offered one hour of outdoor recreation per day, Monday through Friday.  Kunze is also offered three 15-minute showers per week.  He can leave the cell to meet with the law librarian on the administrative segregation unit, he can go to the infirmary for medical treatment, he can make telephone calls, and he can leave to have his hair cut. Kunze rarely takes advantage of these opportunities and, in particular, he has consistently refused outdoor recreation while at the North Dakota State Penitentiary and regularly refuses to leave his cell for a shower.  The Court finds, as a matter of law, that the five hours of outdoor exercise time available to Kunze does not constitute a deprivation of exercise that violates the Eighth Amendment to the Constitution.  Further, although Kunze has not claimed that he has suffered any detrimental

18

effects from the limited times for exercise, even if he were to claim such, the Court finds that his

failure to take advantage of the outdoor exercise provided would preclude him from shifting liability

for his actions to the Defendants.


    **D.**    **RECEIPT OF MAIL**

In Turner v. Safley, 482 U.S. 78, 89 (1987), the Supreme Court stated that prison regulations

pass constitutional muster if they are "reasonably related to legitimate penological interests."  The

Supreme Court further provided four factors for the courts to examine when determining whether

the regulation withstands scrutiny:

> (1) whether there is a valid rational connection between the regulation and the
> legitimate government interest it purports to further; (2) whether the inmate has an
> alternative means of exercising his constitutional right; (3) the impact that
> accommodation of the inmate's right would have upon others, including inmates as
> well as non-inmates; and (4) the absence of a ready alternative to the regulation.

Oritz v. Fort Dodge Corr. Facility, 368 F.3d 1024, 1026 (8th Cir. 2004).  The Eighth Circuit has held

that the standard set out in Turner applies to both incoming and outgoing mail.  Thongvanh v.

Thalacker, 17 F.3d 256, 259 (8th Cir. 1994).

Kunze claims that the Defendants have deliberately interfered with both incoming and

outgoing mail.  Kunze has only exhausted his administrative remedies through the grievance process

with regard to one complaint of mail interference.  See Docket Nos. 41-1, ¶ 29, and 41-17.  In this

grievance, Kunze complained that a "small Car Collector Publication," a catalog sent by a friend,

had been withheld.

The policies provided by the Department of Corrections and Rehabilitation do not allow

inmates to possess catalogs in their cells, nor do they allow an inmate to receive a publication that

is not sent directly from the publisher.  <u>See</u> Docket No. 41-1.  Each of these policies will be examined in turn.

### 1.      CATALOGS IN CELLS CREATES CLUTTER AND FIRE HAZARD

As to the first factor under <u>Turner</u>, the Defendants contend that the reasons for the policy not allowing inmates to possess catalogs in their cells is that the catalogs create clutter, which makes it more difficult to find contraband, including weapons, and further create a fire hazard.  The Court expressly finds that there is a valid rational connection between the regulation prohibiting catalogs in an inmate's cell and the legitimate government interest it purports to further.

With regard to the second <u>Turner</u> factor, whether an inmate has another way to exercise his constitutional right, the record reflects that catalogs are available for inmates in the library and in housing units from which inmates may orders specific types of things.  <u>See </u>Docket No. 41-1.  If a catalog is received through the mail that contains products that inmates are permitted to order, the catalog will be placed in the designated areas.  It is clear that inmates have an acceptable means to exercise their ability to peruse catalogs and place orders.  The Court finds that Kunze has sufficient alternative means of accessing catalogs.

The third and fourth factors under the <u>Turner</u> framework call for an evaluation of the alternatives to the existing regulation and their impact on the prison, inmates, and non-inmates.  <u>Oritz v. Fort Dodge Corr. Facility</u>, 368 F.3d 1024, 1027 (8th Cir. 2004).  "If a ready alternative to the challenged prison regulation exists, the regulation is invalid."  <u>Id.</u>  "The alternative, however, must not impose more than a de minimis cost on the prison system.  <u>Id.</u> (citing <u>Thornburgh</u>, 490 U.S. at 418).

20

Kunze has not identified a cost-free way for the prison to accommodate him.  Further, the inequality resulting from individual inmates receiving popular publications not received by others could result in increased anger and fighting between inmates, increased anger with correctional officers, and could potentially result in a lawsuit on equal protection grounds.  The Court finds that the third and fourth factors of the <u>Turner</u> framework support the Department of Corrections and Rehabilitation's policy to disallow catalogs in inmate's cells.

In summary, there is a valid rational connection between the Department of Corrections and Rehabilitation's policy to prohibit catalogs in Kunze's cell and the interest of keeping the cell free from clutter and reducing a fire hazard.  Further, Kunze has acceptable alternative means of exercising his right to view catalogs, the impact from allowing Kunze and other inmates to have catalogs in their cells could be severe, and Kunze has pointed out no de minimis or cost-free alternative remedy.  Therefore, the Court finds that the regulation disallowing catalogs in inmate's cells is reasonably related to legitimate penological interests.  Kunze's constitutional rights have not been violated by the withholding of the catalog.


## 2. PUBLICATION MUST COME DIRECTLY FROM PUBLISHER

Even if the Department of Corrections and Rehabilitation's policy against allowing catalogs in inmate's cells were not reasonably related to legitimate penological interests as the Court has found it to be, the Defendants have provided a second policy reason for disallowing a publication not sent directly from the publisher.  The Department of Corrections and Rehabilitation's policy requiring that publications sent to inmates come directly from the publisher is based on the ground

that there are neither sufficient members of staff nor time to review each publication that might come from a friend or family member and examine that publication for weapons or drugs.[2]

In Bell v. Wolfish, 441 U.S. 520, 550 (1979), the United States Supreme Court held that the Federal Bureau of Prisons' requirement that all hardcover books sent to an inmate come from a publisher, bookstore, or book club does not violate the First Amendment rights of inmates.  The Supreme Court noted that "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," and that "courts should ordinarily defer to their expert judgment in such matters."  Id. at 547-48 (internal citations omitted).

While the holding in Bell was limited to hardcover books, the Eighth Circuit in Cotton v. Lockhart, 620 F.2d 670, 672 (8th Cir. 1980), held that the "publisher only" rule for magazines, newspapers and books did not unconstitutionally infringe upon an inmate's First Amendment rights because the receipt of such materials poses a substantial security problem and inmates had an opportunity to obtain such reading material from the library.  Several other circuit courts have also addressed restrictions on an inmate's receipt of other forms of mail and found such restrictions constitutional.  See Ward v. Washtenaw County Sheriff's Dep't, 881 F.2d 325, 330 (6th Cir. 1989) (upholding constitutionality of "publisher only" rule as applied to periodicals for prisoners in a county jail and noting the Supreme Court's re-emphasis on the deference due prison administrators); Hurd v. Williams, 755 F.2d 306, 308-09 (3rd Cir. 1985) (upholding "publisher only" limitation on

---

[2]Drugs are often included on pages of letters sent in from friends and family.  A special machine is used to detect drugs sent to inmates this way, but it is time consuming and already difficult to keep up with the drugs that are sent merely in letters.  To have to examine multiple pages of a magazine sent to an inmate by a friend or family member would place an inordinate burden and cost on the Department of Corrections and Rehabilitation.  See Docket No. 41-1, ¶ 30.

soft cover publications based on <u>Bell</u>, and rejecting inmate's contention that the regulation can be sustained only if it is the least possible regulation of the constitutional right based on an understanding of the Supreme Court's requirement of deferential review which "leaves, no room for a requirement that prison officials choose the least restrictive regulation").

The North Dakota Supreme Court has upheld the constitutionality of the Department of Corrections and Rehabilitation's "publisher only" policy based on a review of federal law.  <u>Larson v. Schuetzle</u>, 712 N.W.2d 617, 624 (N.D. 2006).  The North Dakota Supreme Court applied the framework outlined by the Supreme Court in <u>Turner</u> and determined that the "publisher only" rule is reasonable and reasonably related to legitimate penological interests.  The Court finds the reasoning in <u>Larson v. Schuetzle</u> to be persuasive.

Based on the controlling Eighth Circuit precedent in <u>Cotton v. Lockart</u>, the Court finds as a matter of law that the policy requiring that all publications sent to inmates come directly from the publisher does not violate Kunze's First Amendment rights.


E.       <u>REMOVAL OF PROPERTY FROM CELL</u>

It is well-established Supreme Court jurisprudence that an inmate's constitutional rights may be significantly restricted or even lost.  "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 525 (1984) (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979)).  In <u>Bell v. Wolfish</u>, 441 U.S. 520, 554 (1979), the Supreme Court stated that the "due process rights of prisoners and pretrial detainees [against the deprivation

23

of their property without due process of law] are not absolute; they are subject to reasonable limitation or retraction in light of the legitimate concerns of the institution."

In <u>Lyon v. Farrier</u>, 730 F.2d, 525, 527 (8th Cir. 1984), the Eighth Circuit held that inmates have no specific constitutional right to have in their possession property that belongs to another inmate.  In <u>Lyon</u>, an inmate violated the rules of the prison because he possessed a painting that belonged to someone else.  The Eighth Circuit reasoned that because the property was contraband, the inmate had no protected property interest in the painting.  Therefore, the Court held that the removal and destruction of the painting did not implicate any due process concerns.

Kunze claims that correctional officers removed magazines, books, and newspapers from his cell and that taking the property was a violation of his due process rights.  Kunze's claim is not specific as to what reading material was removed from his cell.  However, the only complaint Kunze made in which he exhausted his administrative remedies concerned an Incident Report he received regarding an assault on correctional officers.  The assault occurred when there was a shakedown at which time two magazines were removed because they were addressed to another inmate.

The Department of Corrections and Rehabilitation has issued a policy defining contraband, and provides:

Contraband is any item or article inside a correctional facility that:

1.      Has not been issued to you by the institution.
2.      Has not been purchased by you in the commissary.
3.      Has not been purchased or allowed through approved institutional channels.
4.      Has been altered from its original state.
5.      Is unauthorized.

You are not permitted to have contraband at any time.  Possession of another inmate's property is considered contraband.  Items that are authorized for retention in some areas of the institution, such as arts and crafts tools, will be considered contraband if they are found in unauthorized areas, such as in a cell house.

<u>See</u> Docket No. 41-8.

Kunze has stated that the magazines removed from his cell belonged to a fellow inmate.  <u>See</u> Docket No. 17-1, p. 21.  As such, the magazines are contraband and Kunze has no property interest or right to their possession in his cell.  The Court finds that Kunze's claim of due process violation fails as a matter of law.

### III.   <u>CONCLUSION</u>

The Defendants' Motion for Summary Judgment (Docket No. 37) is **GRANTED**.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 14th day of March, 2007.

_/s/ Daniel L. Hovland_
Daniel L. Hovland, Chief Judge
United States District Court

25